UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CHELSEY SORAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:16-CV-291-TLS |
| | ) | |
| NEW HORIZONS HOME HEALTHCARE | ) | |
| LIMITED LIABILITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This litigation arises out of Plaintiff Chelsey Sorah's termination from her employment with Defendant New Horizons Home Healthcare Limited Liability Company. The Plaintiff claims that the Defendant violated the Family Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and the Pregnancy Discrimination Act (PDA) when it terminated her while she was on leave. Currently before the Court is the Defendant's Motion for Summary Judgment [ECF No. 21]. The Plaintiff responded to the Defendant's Motion on June 25, 2018 [ECF Nos. 23, 24], and the Defendant replied on July 10, 2018 [ECF No. 25].

**FACTUAL BACKGROUND**

The Plaintiff began working for the Defendant in June 2013, as the Director of Human Resources. As part of her job, the Plaintiff was familiar with FMLA, PDA, and ADA requirements and regulations, and the Defendant paid for the Plaintiff to attend training courses regarding employment-related legal matters.

On April 6, 2015, the Plaintiff informed her supervisor, Jessica Pearson, that her OB/GYN had ordered her to take bed rest for the rest of her pregnancy, and she began taking leave. While the Plaintiff was on leave, the Defendant provided two pay advances to her at her request, totaling $800. Additionally, Jerome Metz, one of the owners of the Defendant, sent the Plaintiff a text telling her that she would have the same position she had after she returned from her leave. On May 25, 2015, the Plaintiff gave birth. The Plaintiff continued taking leave. Had the Plaintiff began taking FMLA leave on April 6, 2015, her entitlement would have ended on June 29, 2015.

On June 30, 2015, two employees of the Defendant informed Jessica Pearson that a client claimed the Plaintiff assisted the client in committing fraud to pass a medication audit. The Defendant investigated and concluded there was enough evidence to terminate the Plaintiff. The Defendant mailed a termination letter, citing the medication fraud as the reason for the Plaintiff's termination, on July 6, 2015.

On July 9, 2015, the Plaintiff filed for unemployment. The Defendant contested the Plaintiff's claim, and Jessica Pearson provided the following explanation for the Plaintiff's termination: "[e]mployee has been out for a period over 60 days. She never provided agency with doctor slips to be off work, nor did she file FMLA. She never provided a return to work date. Position needed to be taken care of. Not personal." Jessica Pearson testified that the Plaintiff was, at that point, terminated for FMLA leave and not for the medication fraud.

On July 17, 2015, James J. Metz, another owner of the Defendant, mailed the Plaintiff a second Notice of Termination based on an undocumented leave of absence. Specifically, the letter stated that the Plaintiff was terminated "because of your failure to return to work following your authorized 12-week maternity leave that ended June 29, 2015." James Metz testified in his

deposition that he sent the second letter because an employee had informed him that the Plaintiff was planning to return to work around July 22, 2015, and he wanted her to know her employment had been terminated. The Plaintiff alleges that she spoke to Jessica Pearson and Jerome Metz after her termination, and that Jessica Pearson told her the Defendant was lying, and asking Jessica Pearson to lie, about the reasons for the Plaintiff's termination.

In its response to the Plaintiff's written discovery requests, the Defendant cited another reason for the Plaintiff's termination. The Defendant alleges that, during the investigation of the medication audit fraud, it discovered that the Plaintiff was working caregiver shifts in place of another of the Defendant's employees, Mary Beth Hamilton. The Plaintiff, however, alleges that the Defendant already knew she worked these shifts, and identifies Jessica Pearson's testimony that "I think at one time maybe I did say yes and go ask Jerome" as support for her allegation. The Plaintiff's name does not appear on the schedule as a caregiver, and she falsified her name on medical records. Mary Beth Hamilton would pay the Plaintiff in cash out of the paycheck she received from the Defendant. The Defendant reported the incident to the State of Indiana, which concurred that the Plaintiff's actions constituted Medicaid fraud.

At no point during the Plaintiff's leave did the Defendant communicate to her when her FMLA-qualified leave began, and thus when the Plaintiff would be expected to return to work. According to Jessica Pearson, the Plaintiff's supervisor, the Defendant's FMLA protocol was to "request a doctor's order;" because the employees were responsible for procuring FMLA paperwork themselves. The Defendant never sent any paperwork regarding FMLA to the Plaintiff. In fact, Jessica Pearson testified that the Plaintiff was not on FMLA leave, because there was no paperwork documenting her absence. The Defendant did request that the Plaintiff

provide a certification pertaining to her leave, and she provided two notes from her healthcare provider. The Plaintiff remained in contact with the Defendant during her leave.

## STANDARD OF REVIEW

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

**A.    The Plaintiff's FMLA Claims**

The Plaintiff raises two FMLA claims: retaliation and interference. "The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act.'" *See Shaffer v. Am. Medical Ass'n*, 662 F.3d

439, 443 (7th Cir. 2011) (citing *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010)).

**1.** *The Plaintiff's FMLA Retaliation Claim*

An employer cannot use an employee taking FMLA leave as a negative factor in termination. *See Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012) (citing *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008)); *see also* 29 U.S.C. § 2615(a)(2). "To succeed on a retaliation claim, the plaintiff does not need to prove that 'retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Goelzer*, 604 F.3d at 995 (citing *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741–42 (7th Cir. 2008) (emphasis in original)).

As with other employment statutes,[1] to prove that her termination was retaliatory for taking protected leave, the Plaintiff must establish that (1) she engaged in a protected activity, (2) the Defendant took an adverse employment action against her, and (3) there is a causal connection between the two. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). It is undisputed that the Plaintiff can establish the first two points. To establish the third, the Plaintiff must present enough evidence for a reasonable fact-finder to conclude she was terminated, at least in part, because she took FMLA leave. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Such evidence might occasionally include direct admissions,

---

[1] Claims of retaliatory discharge under the FMLA are analyzed in the same manner as retaliatory discharge claims under other employment statutes, such as Title VII and the ADA. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014) (stating that the "same model of proof" applied to both the plaintiff's "Title VII and FMLA retaliation claims").

5

but will more commonly rely on circumstantial evidence, including suspicious timing and evidence the employer offered a pretextual reason for an adverse employment action. *See Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013) (citations and quotations omitted). If the Plaintiff provides enough evidence, "the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive." *See Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006) (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)).

Here, the Plaintiff has presented several direct admissions of illegal retaliation. First, Jessica Pearson testified that "[the Plaintiff] [was] terminated over FMLA," that her supervisors, James and Jerome Metz, told her "that FMLA was where we're going." Second, to the Indiana Department of Workforce Development (IDWD), the Defendant stated: "[e]mployee has been out for a period over 60 days. She never provided agency with Doctor slips to be off work. Nor did she file FMLA . . . position needed to be taken care of. Not personal." Both statements could suggest, to a reasonable factfinder, that the Defendant considered the Plaintiff's protected leave in terminating her. Further supporting the Plaintiff's claim are the Defendant's shifting explanations for the Plaintiff's termination. First, the Defendant terminated the Plaintiff for her actions related to the medication audit, then for taking leave, then for taking leave beyond that provided by the FMLA, and finally for working caregiver shifts under another employee's name. A reasonable factfinder could conclude that the Defendant considered the protected leave to which Plaintiff was entitled as at least a substantial factor in terminating her. The Plaintiff has

presented evidence that she was terminated, at least in part, because she took leave.[2] *Cf. Preddie v. Bartholomew Consolidated Sch. Corp.*, 799 F.3d 806, 819 (7th Cir. 2015)

The Defendant argues that its explanations are not "shifting" but "additional." *See Def.'s Reply to Resp. to Mot.*, ECF No. 25, p. 7. The Defendant also emphasizes that the Plaintiff does not deny that she worked the shifts under another caregiver's name. *Id*. at 5. The Defendant concludes that therefore, its "decision to terminate [the Plaintiff] was legitimate, nondiscriminatory, and just." *Id*. But the explanations are shifting. The Defendant says it learned of both types of fraudulent conduct between June 30, 2015, and July 6, 2015. Yet, despite three opportunities to do so, in the first termination letter, the paperwork submitted to the IDWD, and the second termination letter, the Defendant did not state this explanation. The disconnect between the Defendant's knowledge of the conduct, and its citation of the conduct as a reason for termination, could allow a reasonable jury to interpret the Defendant's explanation as pretext. *Cf. Donley v. Stryker Sales Corp.*, — F.3d —, 2018 WL 4957196, at *3 (7th Cir. Oct. 15, 2018); *see also Gable v. Mack Trucks, Inc.*, 185 F. Supp. 3d 1055, 1061–62 (N.D. Ill. 2015) (citing *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) (noting that "an employer who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination")), *and Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

The Defendant argues that, regardless of the evidence of retaliatory motive, it would have terminated the Plaintiff either for (1) the Plaintiff's actions during the medication audit, or (2) her

---

[2] The Defendant has also presented evidence that it supported the Plaintiff's leave and expected her to return. For example, advancing pay to the Plaintiff and the text message saying she would have the same position plus more both suggest the Defendant expected the Plaintiff to return. However, given the Plaintiff's evidence, the Court cannot say that no reasonable factfinder could believe the Plaintiff's explanation over the Defendant's, and thus summary judgment is inappropriate.

working shifts under Mary Beth Hamilton's name.[3] However, testimony calls both non-retaliatory reasons into question. The Plaintiff testified that Jessica Pearson told her that she, Pearson, was encouraged to lie about the reason for the Plaintiff's termination. The Plaintiff also testified that the Defendant knew she worked shifts under another's name. Jessica Pearson testified that "the Plaintiff was no longer terminated over the medication. Now she's terminated over FMLA," and that the Defendant did at one time approve the Plaintiff's working another employee's shifts.

Circumstantial evidence also rebuts the Defendant's claim that it would have terminated the Plaintiff for nonretaliatory reasons. First, on the IDWD form, the Defendant states that it offered her a position as a caregiver. Offering the Plaintiff a position as a caregiver is not consistent with firing the Plaintiff for behavior while acting as a caregiver one week prior. Second, the Defendant sent the Plaintiff two termination letters. In addition to shifting the explanation, the Defendant's second letter implies that the Defendant was still holding the Plaintiff's position open, despite having cause to fire her for over two weeks. That the Defendant still felt the need to fire the Plaintiff almost two weeks after firing her initially belies its statement that the Plaintiff would have been fired solely on the basis of the fraudulent conduct. If the Defendant considered the Plaintiff fairly and completely terminated for her actions in connection with the medication audit, a reasonably factfinder might ask why it sent a second letter, with yet another explanation.

Because the Plaintiff has presented evidence that the Defendant fired her, at least in part, because she took FMLA leave, which rebuts the Defendant's claim that it would have fired her

---

[3] The Defendant discusses this explanation as both firing the Plaintiff for Medicare fraud and other employer policy violations, and for FMLA fraud, as she could apparently work while out on leave. The framing of the explanation does not impact its analysis as pretextual.

regardless, the Defendant's Motion for Summary Judgment on the FMLA retaliation claim is denied.

**2.    *The Plaintiff's FMLA Interference Claim***

To establish a claim of interference under the FMLA, the Plaintiff must establish: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *See Goelzer.*, 604 F.3d at 993. The parties agree that the Plaintiff has established all factors except that the Defendant denied her FMLA benefits to which she was entitled.

The Plaintiff argues that she did not receive adequate notice of her FMLA entitlement. The Defendant does not dispute that it failed to provide the notice required by the regulations. However, a technical violation of the FMLA regulations will not give rise to liability unless the employee was prejudiced. *See Franzen v. Ellis Corp.*, 543 F.3d 420, 462 (7th Cir. 2008) (citing *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002)). The Plaintiff fails to establish that she was prejudiced by the Defendant's technical violation. The Plaintiff did, in fact, receive twelve weeks of unpaid leave. She testified that the FMLA notice would not tell her anything she did not already know. Given that the Plaintiff "knew her rights under [the] FMLA," and received her full leave entitlement despite the Defendant's failures, the Plaintiff cannot support a claim that the Defendant interfered with her FMLA rights by failing to provide her adequate notice.[4]

---

[4] The Plaintiff is correct that an employer may provide more than the required twelve weeks of leave. However, terminating an employee for taking more than the protected leave is not forbidden by the FMLA, and so the point is not relevant here. The Plaintiff has not presented evidence that, because the Defendant failed to provide her the requisite notice, she believed her protected leave extended beyond June 29, 2015.

But the Defendant did interfere with another of the Plaintiff's entitled benefits: reinstatement. *See Simpson v. Office of the Chief Judge of the Cir. Ct. of Will Cty.*, 559 F.3d 706, 712 (7th Cir. 2009) ("Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights."). An employee's right to reinstatement is not absolute, and the employer may present evidence to show that the employee would have been fired regardless of taking leave, which the employee must overcome to survive summary judgment. *See Pagel*, 695 F.3d at 629 (citing *Cracco*, 559 F.3d at 636). However, as discussed in connection with the Plaintiff's FMLA retaliation claim, the Plaintiff has overcome the Defendant's evidence that she would have been fired regardless of taking leave. Thus, the Defendant's Motion for Summary Judgment on the Plaintiff's FMLA interference claim is denied.

**B.      The Plaintiff's PDA and ADA Claims**

The Plaintiff claims that the Defendant discriminated against her because of her pregnancy, in violation of Title VII and the Pregnancy Discrimination Act.[5] As with her protected status as an employee taking FMLA leave, the question is whether a reasonable factfinder could conclude that the Plaintiff's pregnancy caused the Plaintiff's termination. *See Owens v. Old Wis. Sausage Co.*, 870 F.3d 662, 666–67 (7th Cir. 2017); *see also Ortiz*, 834 F.3d at 765.

The Defendant argues that the Plaintiff has not presented any evidence that specifically links her termination to her pregnancy rather than her FMLA leave. The Plaintiff, in place of

---

[5] The PDA specifies that "Title VII's prohibition against sex discrimination applies to discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) (quoting 42 U.S.C. § 2000e(k)).

evidentiary support, argues that because she only took the leave because she was pregnant, and she has established enough for a factfinder to reasonably conclude she was terminated in part because of her leave, her PDA claim must survive summary judgment. *See Pl.'s Resp. to Mot.*, ECF No. 23, at p. 21 ("[B]ecause said leave was due to [her] pregnancy, [the Plaintiff] has presented sufficient direct evidence of a causal connection between her pregnancy-related leave and the termination of her employment.").

The case law does not support the Plaintiff's argument. The PDA protects against discrimination based on pregnancy and its related conditions, so unless the Plaintiff can establish that she was terminated for being pregnant or because her leave was pregnancy-based, and not just for taking leave, this claim cannot survive summary judgment. *See Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). The Plaintiff has not presented any evidence that she was terminated for being pregnant. The Plaintiff provides no link between her pregnancy and her termination; for instance, she has not presented any comments from the Defendant about pregnancy, or pointed to individuals who were not pregnant and were treated better, or any of the other standard evidence for such linkage. *See, e.g.*, *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017). While the evidence that the Defendant's reason for firing the Plaintiff was pretextual would apply under the PDA's framework, the stated reason must be a pretext for the illegal reason of pregnancy discrimination – and the Plaintiff has not established that the illegal reason had anything to do with her pregnancy. Hence, the Plaintiff has failed to demonstrate that a material fact exists with respect to whether she was impermissibly terminated due to her pregnancy, and therefore her PDA claim cannot survive summary judgment.

The Plaintiff's ADA claim fails for the same reason: even assuming she qualified as an individual with a disability,[6] the Plaintiff has presented no evidence that her firing had anything to do with her disability as distinct from her taking leave. *Cf. Rowlands v. UPS – Fort Wayne*, 901 F.3d 792, 801–02 (7th Cir. 2017). Again, although a reasonable factfinder might conclude that the Defendant's explanation for the Plaintiff's termination was pretextual, the Plaintiff has not presented any evidence that it was a pretext for disability discrimination.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Defendants' Motion for Summary Judgment [ECF No. 21] as to the Plaintiff's claims under the Pregnancy Discrimination Act and the Americans with Disabilities Act, but DENIES the Motion as to the Plaintiff's claims under the Family and Medical Leave Act. The Final Pretrial Conference and Trial dates will be set by separate entry.

SO ORDERED on November 7, 2018.

                                              s/ Theresa L. Springmann
                                              CHIEF JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT

---

[6] The Court makes no ruling on whether the Plaintiff would so qualify.